T.C. Memo. 1996-528


UNITED STATES TAX COURT


KHOSROW GHADIRI AND TURAN MIRHADY GHADIRI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14817-95.                    Filed November 27, 1996.


        Ps operated the Maple Press and Acacia Press print
shops during 1986 and 1987.  Ps operated the Maple
Press, Acacia Press, and Print Technology print shops
during 1988.  During all 3 years, Ps deposited the
proceeds from the print shops into bank accounts.
        1.  <u>Held</u>:  Ps must include in income the portion
of Maple Press, Acacia Press, and Print Technology bank
deposits which did not represent gross receipts
reported, insufficient funds checks, bank debits, or
interaccount transfers.
        2.  <u>Held</u>, <u>further</u>,  R is not barred by the period of
limitation from assessing tax for Ps' 1988 taxable year.
        3.  <u>Held</u>, <u>further</u>, Ps are liable for additions to
tax under sec. 6651(a)(1), I.R.C., for all years in
issue.
        4.  <u>Held</u>, <u>further</u>, Ps are liable for additions to
tax under sec. 6653(a)(1)(A) and (B), I.R.C., for 1986
and 1987, and under sec. 6653(a)(1), I.R.C., for 1988.

Jerold A. Reiton and Alan James Pinner, for petitioners.

Andrew P. Crousore, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Khosrow Ghadiri (Mr. Ghadiri) and Turan Mirhady Ghadiri (Mrs. Ghadiri) petitioned the Court to redetermine respondent's determination of the following Federal income tax deficiencies and additions thereto:

| | | Additions to Tax | | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1) | Sec. 6653(a)(1)(B) |
|---|---|---|---|---|---|
| 1986 | $227,086 | $56,771 | $11,354 | --- | 50% of the interest due on $227,086 |
| 1987 | 143,674 | 35,919 | 7,184 | --- | 50% of the interest due on $143,674 |
| 1988 | 33,251 | 8,313 | --- | $1,663 | --- |

Respondent later adjusted these deficiencies to the amounts stated below.  Respondent conceded that the additions to tax should be adjusted to reflect the revised deficiencies.

| | | Additions to Tax | | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1) | Sec. 6653(a)(1)(B) |
|---|---|---|---|---|---|
| 1986 | $129,159 | $56,771 | $11,354 | --- | 50% of the interest due on $268,589 |
| 1987 | 75,428 | 35,919 | 7,184 | --- | 50% of the interest due on $260,736 |
| 1988 | 41,969 | 8,313 | --- | $1,663 | --- |

Following concessions, we must decide:

1.  Whether, and to what extent, amounts that petitioners deposited into their print shop bank accounts are includable in their 1986, 1987 and 1988 gross income.  We hold petitioners must include $449,306, $401,226, and $332,147 in gross income for their 1986, 1987, and 1988 taxable years, respectively.

2.  Whether respondent is barred from assessing tax for petitioners' 1988 taxable year.  We hold she is not.

3.  Whether petitioners are liable for additions to tax under section 6651(a)(1) for their 1986, 1987, and 1988 taxable years.  We hold they are.

4.  Whether petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B) for their 1986 and 1987 taxable years, and under section 6653(a)(1) for their 1988 taxable year.  We hold they are.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT[1]

---

[1] During the trial, petitioners' counsel presented testimony of petitioners and their acquaintances.  We found much of their testimony to be vague, elusive, and uncorroborated.  Under the circumstances, we are not required to, and we do not, rely on that testimony to support petitioners' positions.  See Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Clark v. Commissioner, 266 F.2d 698, 708-709 (9th Cir. 1959), affg. in part and remanding T.C. Memo. 1957-129.

Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in San Jose, California, when they filed their petition.

During petitioners' 1986, 1987, and 1988 taxable years, they owned and operated print shops known as "Maple Press" and "Acacia Press". During petitioners' 1988 taxable year, they also owned and operated a print shop known as "Print Technology". Petitioners did not keep books or records for any of these print shops. During 1986 and 1987, petitioners' only sources of income were Maple Press, Acacia Press, and Mr. Ghadiri's teaching position, which paid him less than $5,000 per year. During 1988, petitioners' only sources of income were Maple Press, Acacia Press, Print Technology, and Mr. Ghadiri's teaching position, which paid him less than $5,000.

Petitioners reported Mr. Ghadiri's teaching income on their tax returns for the respective years. Petitioners hired Peter A. Balbiani, a certified public accountant, to file their Federal income tax returns for 1986, 1987, and 1988. For 1986, 1987, and 1988, the record contains no copies of deposit slips for the bank accounts into which the gross receipts of petitioners' print shops were deposited.

During 1986, petitioners made the following deposits and reported on their tax return the following gross receipts from Maple Press and Acacia Press:

| Entity | Account Name | Total Deposits | Gross Receipts Reported |
|--------|-------------|---------------|------------------------|
| Maple Press | Bank of America | $512,037 | $125,199 |
| Acacia Press | Bank of America | 94,124 | - 0 - |
| Total | | 606,161 | 125,199 |

In 1986, Maple Press received checks totaling $7,765 which were not honored on presentment due to insufficient funds (ISF checks) and had miscellaneous bank debits totaling $15,299. Acacia Press received ISF checks totaling $1,282. The following transfers occurred during 1986:

| Transfer From | Entity Receiving Transfer | | |
|---------------|---------------|---------------|---------------|
| | Maple Press | Acacia Press | Total |
| Mrs. Ghadiri | $1,730 | - 0 - | $1,730 |
| Maple Press | - 0 - | $2,410 | 2,410 |
| Acacia Press | 3,170 | - 0 - | 3,170 |
| | 4,900 | 2,410 | 7,310 |

During 1987, petitioners made the following deposits and reported on their tax return the following gross receipts from Maple Press and Acacia Press:

| Entity | Account Name | Total Deposits | Gross Receipts Reported |
|--------|-------------|---------------|------------------------|
| Maple Press | Bank of America | $277,574 | $126,267 |
| | Bank of the West | 169,241 | - 0 - |
| Acacia Press | Bank of America | 360,236 | - 0 - |
| | Bank of the West | 16,622 | - 0 - |
| Total | | 823,673 | 126,267 |

In 1987, Maple Press received ISF checks totaling $2,619 and had miscellaneous bank debits totaling $18,090.  Acacia Press received ISF checks totaling $35,897.  The following transfers occurred during 1987:

|  | Entity Receiving Transfer | | |
| Transfer From | Maple Press | Acacia Press | Total |
|---|---|---|---|
| Mrs. Ghadiri | $156,784 | $65,455 | $222,239 |
| Maple Press | - 0 - | 6,066 | 6,066 |
| Acacia Press | 11,290 | - 0 - | 11,290 |
| Total | 168,074 | 71,521 | 239,595 |

For their 1987 taxable year, petitioners received but did not report interest income of $21.

During 1988, petitioners made the following deposits and reported on their tax return the following gross receipts from Maple Press, Acacia Press, and Print Technology:

| Entity | Account Name | Total Deposits | Gross Receipts Reported |
|---|---|---|---|
| Maple Press | Bank of the West | $304,087 | $150,044 |
| Acacia Press | Bank of the West | 176,803 | - 0 - |
| Print Technology | Wells Fargo Bank | 48,368 | - 0 - |
| Total | | 529,258 | 150,044 |

In 1988, Maple Press received ISF checks totaling $6,533.  Acacia Press received ISF checks totaling $7,886.  The following transfers occurred during 1988:

|  | Entity Receiving Transfer | | | |
| Transfer From | Maple Press | Acacia Press | Print Technology | Total |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Mrs. Ghadiri | $360 | – 0 – | $1,600 | $1,960 |
| Maple Press | – 0 – | $10,922 | – 0 – | 10,922 |
| Print Technology | 13,725 | 6,050 | – 0 – | 19,775 |
| Total | 14,085 | 16,972 | 1,600 | 32,657 |

For their 1988 taxable year, petitioners received but did not report interest income of $9.

Respondent used a bank deposits analysis to reconstruct petitioners' income for 1986, 1987, and 1988. Respondent determined that petitioners' print shops' checking accounts had total deposits of $485,974, $394,648, and $295,085 for 1986, 1987, and 1988, respectively. The notice did not specifically mention "Maple Press" even though the deficiencies determined in the notice of deficiency for 1986, 1987, and 1988 took into account only gross receipts from Maple Press. Following discussions with petitioners, respondent adjusted petitioners' deficiencies to include in their gross income gross receipts from Acacia Press and Print Technology. Although respondent included the gross receipts from additional stores in making her revisions, the deficiencies for 1986 and 1987 are lower, as a result of respondent's adjustments, than originally determined because respondent gave petitioners credit for additional inter-account transfers and ordinary and necessary business expenses.

Mr. Ghadiri received a bachelor's degree in electrical engineering at the University of California at Berkeley, a

master's degree in electrical engineering at San Jose State University, and a doctoral degree in electrical engineering from the University of California at Berkeley and San Jose State University. Mrs. Ghadiri received a bachelor's degree in German at San Jose State University and a master's degree in math and German at San Jose State University. Mr. Ghadiri testified that he received approximately $680,000 in loans from acquaintances during the years in question. During the trial, Mr. Ghadiri's acquaintances stated that they had lent him money. Each acquaintance that testified claimed to have canceled checks regarding the loan but failed to bring the checks to trial.

Petitioners filed their joint 1986, 1987, and 1988 Federal income tax returns on November 15, 1990. On August 2, 1993, petitioners and respondent executed a Form 872-A, Special Consent to Extend the Time to Assess Tax, extending the period of limitation on assessment for petitioners' 1988 taxable year only. On February 8, 1995, petitioners forwarded to respondent a Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, with respect to petitioners' 1988 taxable year. Respondent received the Form 872-T on February 10, 1995. The subject notice of deficiency was mailed to petitioners on May 12, 1995, more than 90 days after respondent received Form 872-T.

OPINION

A. Bank Deposits Analysis

Respondent asserts that the deposits into the Maple Press, Acacia Press, and Print Technology bank accounts constituted unreported income to petitioners in the amounts of $449,306, $401,205, and $332,138 for their 1986, 1987, and 1988 taxable years, respectively.[2]  Petitioners argue that a majority of the deposits were interaccount transfers or loans, rather than income.  We find that the evidence supports respondent.[3]

Section 61(a) defines gross income as "all income from whatever source derived."  Sec. 61(a)(1).  This definition includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994).  When a taxpayer keeps no books or records for his or her business, the Commissioner generally may recompute his or her income under any method that the Commissioner determines clearly reflects income. Sec. 446(b); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Cole v. Commissioner, 586 F.2d 747, 749 (9th Cir. 1978), affg.

---

[2] Respondent asserted in her opening brief that petitioners failed to report gross receipts totaling $333,714 for 1988, but respondent made a mathematical error in that computation.  This $1,567 discrepancy does not affect our holding.

[3] Petitioners argue that respondent has the burden of proof with respect to any income earned by Acacia Press for 1986 and 1987 because Acacia Press was not specifically mentioned in the notice of deficiency and is a new matter.  We are persuaded that the gross receipts in question must be included in petitioners' income for 1986 and 1987 regardless of which party has the burden of proof.

64 T.C. 1091 (1975); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). The Commissioner may use any method that is reasonable in light of the facts and circumstances of the particular case. Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970).

When the taxpayer's records are incomplete, the Commissioner may look to the bank deposits method as evidence of income. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). The propriety of this method is well established. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, supra at 1064; see also Estate of Mason v. Commissioner, supra at 656-657; Harper v. Commissioner, 54 T.C. 1121, 1129 (1970).

In this case, respondent used the bank deposits method to reconstruct petitioners' income. Respondent determined that petitioners received and failed to report gross income totaling $449,306 during their 1986 taxable year. She determined this amount by deducting $125,199 in gross receipts reported, $9,047 in ISF checks, $15,299 miscellaneous bank debits, and $7,310 in interaccount transfers from the $606,161 in total bank deposits during 1986. Respondent further determined that petitioners received and failed to report gross income totaling $401,226 during their 1987 taxable year. She determined this amount by deducting $126,267 in gross receipts reported, $38,516 in ISF checks, $18,090 in miscellaneous bank debits, and $239,595 in

interaccount transfers from the sum of the $823,673 in total bank deposits and $21 in unreported interest during 1987. Respondent further determined that petitioners received and failed to report gross income totaling $332,147 during their 1988 taxable year. She determined this amount by deducting $150,044 in gross receipts reported, $14,419 in ISF checks, and $32,657 in interaccount transfers from the sum of the $529,258 in total bank deposits and $9 in unreported interest during their 1988 taxable year.

Mr. Ghadiri claimed that he received approximately $680,000 in loans during the years in question. However, his allegation was unsupported by documentary evidence, and we found this uncorroborated testimony unpersuasive. Mr. Ghadiri testified that acquaintances made loans to him during the years in question. Although Mr. Ghadiri's acquaintances testified at trial as to their loans to him, they produced no evidence of any indebtedness. We found this testimony unpersuasive. We note, for example, that each acquaintance claimed to have canceled checks regarding the loan but failed to bring the checks to trial.

Mr. Ghadiri testified that he made no interest payments on any of the alleged "loans". Mr. Ghadiri kept no record of any money that was lent to him. Moreover, Mr. Ghadiri testified that all payments that Maple Press and Acacia Press received were deposited in their respective bank accounts. Mr. Ghadiri

admitted that he is unsure of the exact dates when "loans" were made and how much of the "loan" proceeds he deposited in his personal and business bank accounts.

We find no probative evidence that any of the deposits were loans. We are persuaded that the record supports respondent's computation of petitioners' income for each of the 3 years involved, based on the bank deposits.

B. Period of Limitation

Respondent admits that the 3-year period of section 6501(a) has expired with respect to assessing tax for petitioners' 1988 taxable year. Respondent argues, however, that the 6-year period of limitation of section 6501(e)(1) applies because petitioners' 1988 tax return omitted more than 25 percent of their gross income for that year. Petitioners argue that respondent has failed to show that they underreported their income by more than 25 percent because respondent's bank deposits analysis does not meet her burden of proof. We agree with respondent.

Generally, the period of limitation for assessment of tax is 3 years from the date a taxpayer's return is filed. Sec. 6501(a). If, however, a taxpayer omits from gross income an amount in excess of 25 percent of the gross income reported on his or her tax return, the statutory period for assessment is extended to 6 years. Sec. 6501(e)(1)(A).

For the 6-year period to apply, respondent must prove by a preponderance of the evidence that: (1) Petitioners omitted from

gross income an amount in excess of 25 percent of the amount of gross income reported on their 1988 Federal income tax return, and (2) the omitted income was properly includable in gross income.  See Burbage v. Commissioner, 82 T.C. 546, 553 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Bardwell v. Commissioner, 38 T.C. 84, 92-93 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Cruz v. Commissioner, T.C. Memo. 1990-594; Hittleman v. Commissioner, T.C. Memo. 1990-325, affd. without published opinion 945 F.2d 409 (9th Cir. 1991).  Respondent must introduce affirmative evidence to meet this burden of proof.  The Court has stated that "the existence of bank deposits, although not explained or accounted for in a satisfactory manner, does not of itself show that the sums deposited were or were not income." Jones v. Commissioner, 29 T.C. 601, 619 (1957).  However, if bank deposits are connected to a likely source of income, the Court may find that they are income.  Holland v. United States, 348 U.S. 121 (1954); Gong Yok Tsun Chin v. Commissioner, T.C. Memo. 1994-54.

As stated above, respondent has determined petitioners' unreported income for their 1988 taxable year by using the bank deposits method.  The size and frequency of the cash deposits indicate a regular source of cash consistent with the operation of a cash-intensive business, such as print shops.  Mr. Ghadiri testified that he deposited all of his proceeds from the print shops into the bank accounts.  However, he admitted that he

failed to report any income from the operation of Acacia Press and Print Technology for 1988. Petitioners reported no gross receipts for 1988 other than $150,044 from Maple Press. During the year, however, they made deposits of $304,087, $176,803, and $48,368 into the bank accounts of Maple Press, Acacia Press, and Print Technology, respectively and they failed to report interest income of $9.

Petitioners omitted items which constituted more than 25 percent of their gross income on their 1988 Federal income tax return and which should have been included in income. After deducting $150,044 in gross receipts reported, $14,419 in ISF checks, and $32,657 in interaccount transfers, petitioners' unreported gross receipts of $332,147 represented more than a 25-percent omission. As determined above, respondent's bank deposits analysis proves that these unreported gross receipts are properly includable in gross income. We find that respondent has proved a likely source of income, namely the print shop business, and that petitioners' claim of a nontaxable source, in the form of loans, is not creditable. We hold that respondent is not barred from assessing tax and additions to tax against petitioners for their 1988 taxable year. In so holding, we note that Kavoosi v. Commissioner, T.C. Memo. 1986-190, a case relied upon heavily by petitioners to support a contrary holding, is distinguishable on its facts.

C.  Additions to Tax Under Section 6651(a)(1)

Respondent determined additions to petitioners' 1986, 1987 and 1988 income tax under section 6651(a)(1), asserting that petitioners failed to timely file Federal income tax returns for those years. Petitioners filed all of these returns in 1990. Thus, in order to avoid this addition to tax, petitioners must prove that their failure to file timely was: (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Buelow v. Commissioner, 970 F.2d 412, 415 (7th Cir. 1992), affg. T.C. Memo. 1990-219; Church of Scientology v. Commissioner, 823 F.2d 1310, 1321 (9th Cir. 1987), affg. 83 T.C. 381 (1984); Catalano v. Commissioner, 81 T.C. 8 (1983), affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984). A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and, nevertheless, was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference. United States v. Boyle, supra at 245.

Petitioners claim that they are not liable for the addition to tax under section 6651(a)(1) because their accountant advised them that they had no obligation to file returns for 1986, 1987 or 1988. We find it implausible that petitioners' accountant would advise petitioners that they did not have an obligation to

file a tax return when their stores earned hundreds of thousands of dollars a year. Even if their accountant did make such a statement, it would not have been reasonable for petitioners to rely in good faith upon such an erroneous suggestion. Although a taxpayer may have "reasonable cause" when relying on an accountant concerning questions of law, "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under §6651(a)(1)." Id. at 252 (Brennan, J., concurring); see also Church of Scientology v. Commissioner, supra at 1310. Accordingly, we find that petitioners did not have reasonable cause for their failure to file timely tax returns, and that they are liable for these additions to tax under section 6651(a)(1).

D. Additions to Tax Under Section 6653(a)(1)(A) and (B)

Respondent further determined that petitioners' underpayment of their 1986, 1987, and 1988 tax is attributable to negligence. For 1986 and 1987, section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. For 1988, section 6653(a) imposes an addition to tax equal to 5 percent of the portion of the underpayment that is attributable to negligence.

Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Failure to file a timely Federal income tax return is evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Petitioner bears the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioners allege that they were not negligent because they: (1) Were born outside the United States, (2) have never taken any business courses as part of their education, and (3) relied on their tax preparer. We are not persuaded that any of these allegations disproves respondent's determination with respect to these additions to tax. The foreign birthplace of a taxpayer is not sufficient to constitute "reasonable cause". See Jamieson v. Commissioner, T.C. Memo. 1995-550. Although petitioners did not take any business courses, their business experience should have alerted them to the requirement of filing a Federal income tax return. Mr. Ghadiri operated three print shops during the years in question. In fact, he expanded his business from two to three print shops during 1988. Mr. Ghadiri received a doctoral degree in electrical engineering, and Mrs. Ghadiri received a master's degree in both German and math.

Although an accountant signed petitioners' tax returns for the years in issue as the preparer, the record does not show that petitioners relied on their accountant's advice in failing to file their returns timely and failing to report large amounts of gross income. Petitioners' tax preparer never testified as to his tax advice, and petitioners offered no evidence, other than Mr. Ghadiri's testimony, concerning his tax advice. We find Mr. Ghadiri's testimony to be unpersuasive on this issue.

For the reasons stated above, we conclude that the entire underpayment of tax for each year is due to negligence. Accordingly, we sustain respondent's determination on this issue.

We have considered all arguments made by petitioners for contrary holdings and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.